UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
ORIX FINANCIAL SERVICES, INC.
formerly known as
ORIX CREDIT ALLIANCE, INC.

|  |  |
|---|---|
| **Plaintiff,** | 05 CV 9348(LTS) |
|  | AFFIDAVIT OF |
| **- against -** | YVONNE KALPAKOFF |

DELANO MAX HARPER

                              **Defendant.**
-----------------------------------x

**BEFORE ME,** the undersigned notary public on this day Yvonne Kalpakoff, who upon her oath did depose and testify as follows:

1. I am a Senior Vice President of the plaintiff herein, ORIX FINANCIAL SERVICES, INC. ("OFS"or Plaintiff), formerly known as ORIX Credit Alliance, Inc. ("OCAI") is a New York corporation having its principal place of business at 600 Town Park Lane, Kennesaw, Georgia 30144.  I am over the age of 18 years, am competent to make this affidavit, and do so from my own personal knowledge.  I am personally familiar with the files and accounts and have personally reviewed ORIX's records with respect to the Defendant

2.   The jurisdiction of this action is based upon diversity of citizenship, 28 U.S.C. 1332. The amount in controversy, exclusive of interest and costs exceeds the sum of $75,000.00.

3. Upon information and belief the Defendant is a citizen of the state of Alabama.

4. Venue in the County of New York, State of New York,

1

is based upon contractual agreement thereto between the Defendant and the Plaintiff as set forth in written Note(s) and/or Security Agreement executed by the Defendant in favor of the Plaintiff, such documents being referred to and more particularly described hereinafter.

AS AND FOR A FIRST CLAIM

5.    On or about August 14, 2000, OCAI and Defendant DELENO MAX HARPER entered into a certain Promissory Note (hereinafter referred to as the "Note") in an amount of $286,884.00, payable to the order of OCAI in consideration for and as evidence of the indebtedness of said Defendant to OCAI resulting from its financing of the acquisition of certain commercial equipment, to wit: One John Deere Skidder, s/n 560060, One Timberjack Skidder, s/n CE4051, One Barco Loader, s/n 19208, One Prentice Loader, s/n 55109, mounted on Pitts Trailer, s/n 1PEKB4228WP980612, CTR Delimber, s/n 400412, CTR Grapple C229, s/n 44029000 and One Hydro-Ax Fellerbuncher, s/n 6603, all more thoroughly described in Schedule "A" to the Security Agreement referred to in paragraph 6 herein below (said commercial equipment being hereinafter referred to collectively as the "Equipment"). The Equipment was to be used in connection with DELENO MAX HARPER's business activities.  A true and correct copy of the Note annexed to the Complaint, made a part hereof, and marked Exhibit "A".  A true copy of the Complaint is annexed hereto as **Exhibit "1"**.

6.    On or about  August 14, 2000, DELENO MAX HARPER, as

Mortgagor, entered into and executed a Security Agreement – Mortgage on Goods and Chattels with Schedule "A" attached thereto (herein referred to collectively as the "Security Agreement"), in which OCAI is named as Mortgagee, whereby DELENO MAX HARPER granted to OCAI a purchase money security interest in the Equipment, and a security interest in "any and all documents, instruments, chattel paper, goods, general intangibles, inventory, machinery, contract rights, equipment, fixtures, accounts and insurance in which Mortgagor now or hereafter has any right or interest," to secure the Mortgage Obligations as defined therein, including but not limited to the indebtedness of  under the Note. A true copy of the Security Agreement is annexed to the Complaint, made part hereof and marked as Exhibit "B".  (See Exhibit "1")

7.  On or about August 14, 2000, Defendant, DELENO MAX HARPER executed a Delivery/Installation Certificate, Waiver and Agreement, a true copy of which is annexed to the Complaint, made part hereof and marked as Exhibit "C", (see Exhibit "1") whereby said Defendant acknowledges complete and satisfactory delivery of the Equipment free from any defenses, offsets or counterclaims, which said Defendant thereby waives as against OCAI.

8.  On September 26, 2000, OCAI changed its name of record to ORIX FINANCIAL SERVICES, INC.  As a consequence of said change of name, and without limitation or restriction of any kind in law or fact, OFS succeeds to all of the rights of OCAI under the Note, the Assignment agreement referred to hereinabove and any and all agreements, contracts, instruments and other documents

3

relating thereto.

9.   Defendant defaulted in the payments required to be made under and pursuant to the terms of the Note by failing to make the payment due thereunder on the August 01, 2001 and on the 1st day of each month thereafter, when due, and, as a result, OFS accelerated the balance owed under and pursuant to the terms of the Note.

10.   All notices to which Defendant may be entitled, including notice for acceleration and protest, are expressly waived by the terms of the loan documents. A true copy of a computer-printout of the payment history of the account maintained by OFS with respect to the Note is annexed hereto as **Exhibit"2"**. The balance due after acceleration, to wit: $195,338.00  less the discount of $24,015.45 as required by the Note is the sum of $171,322.55.

11.   Pursuant to the terms and conditions of the Note, subsequent to and predicated upon the above-mentioned default of Defendant under the Note, Plaintiff located and peaceably took possession of the Equipment.

12.   On October 18, 2002, OFS conducted a sale of the Equipment, upon due prior written notice thereof to the Defendant and in a commercially reasonable manner in accordance with applicable law.

13. At said sale, the Equipment was sold for a gross purchase price of $54,000.00.  The total amount of costs and expenses of the sale of the Equipment was $3,667.40.  Pursuant to

the terms of the Note and applicable law, OFS is entitled to, and did, deduct said amount of its costs and expenses relating to the sale from the aforesaid gross purchase price received by it from said sale.  Consequently, a credit was applied to the account of $50,332.60.

14.  Pursuant to the terms and conditions of the Note, as of December 21, 2005, there is due and owing to OFS from DELENO MAX HARPER the sum of $171,322.55 plus late charges on payments received late in the aggregate amount of $1,360.96, plus late charges of $50,597.26, on the unpaid balance of $171,322.55 from the day after the default on August 01, 2001 to October 18, 2002 the date of sale less the resale credit of $50,332.60 totaling the sum of $172,948.17 plus default interest at the post-maturity rate set forth in the Note (1/15th of 1% per day thereon from the day after the sale on October 18, 2002 to December 21, 2005 totaling 1,159 days at $115.30 per day, default interest totaling $133,632.70 and attorneys' fees in the amount of $34,589.63 (20% of the total balance due under the Note).  I have annexed hereto as **Exhibit "3"** a true copy of a Deficiency Calculation Worksheet prepared by an employee of OFS in the regular course of business showing the  calculation of the deficiency balance due prior to the inclusion of post sale interest and attorneys fees.

15.  As shown by the return of service on file with the Court, DELENO MAX HARPER was served on November 11, 2005 by service on C-A Credit Corp., the agent for service of process, designated by DELENO MAX HARPER pursuant to the terms of the loan

documents.

  16. In accordance with the terms of the loan documents, on November 11, 2005 ORIX sent by regular and certified mail copies of the Summons and Complaint to the Defendant.

  17. In compliance with the Service Members Civil Relief Act, upon information and belief, the Defendant, DELENO MAX HARPER, is not at the present time in the military, Air Force, Naval Service, U.S. Coast Guard or U.S. Marine Corps or any allied military service of the United States as defined by the Acts of Congress. I base this knowledge upon documents from the Department of Defense Manpower Data Center ,which state that the Defendant is not in the military at this time, a copy of which is annexed hereto as **Exhibit "4".**

              _____
               YVONNE KALPAKOFF

Sworn before me this
10TH day of JANUARY 2006

Notary Public, Cobb County, Georgia
My Commission Expires August 24, 2008

9838ORIXJUDA

6

# EXHIBIT "1"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x

ORIX FINANCIAL SERVICES, INC.
formerly known as
ORIX CREDIT ALLIANCE, INC.

**05 CV 9348**

**ECF CASE**

                              Plaintiff,

          - against -

DELENO MAX HARPER

                              Defendant.
-----------------------------------x

COMPLAINT

          The Plaintiff, ORIX FINANCIAL SERVICES, INC.
formerly known as ORIX CREDIT ALLIANCE, INC. by its attorneys,
STEIN & STEIN, complaining of the Defendant hereby alleges:

## JURISDICTIONAL FACTS

          1.   The jurisdiction of this action is based upon
diversity of citizenship, 28 U.S.C. 1332. The amount in
controversy, exclusive of interest and costs exceeds the sum of
$75,000.00.

          2. The Plaintiff ORIX FINANCIAL SERVICES, INC.("OFS" or
"Plaintiff")formerly known as ORIX CREDIT ALLIANCE, INC.(OCAI")
was and still is a New York corporation maintaining its principal
place of business at 600 Town Park Lane, Kennesaw, Ga 30144.


          3.   Upon information and belief the defendant DELENO MAX
HARPER is a citizen of the State of Alabama.

          4.   Venue in the County of New York, State of New York,
is based upon contractual agreement thereto between the
Defendant and the Plaintiff as set forth in a written Note and
Security Agreement executed by the Defendant in favor of the

Plaintiff, such documents being referred to and more particularly described hereinafter.

### AS AND FOR A FIRST CLAIM

5.  On or about August 14, 2000, OCAI and Defendant DELENO MAX HARPER entered into a certain Promissory Note (hereinafter referred to as the "Note") in an amount of $286,884.00, payable to the order of OCAI in consideration for and as evidence of the indebtedness of said Defendant to OCAI resulting from its financing of the acquisition of certain commercial equipment, to wit: One John Deere Skidder, s/n 560060, One Timberjack Skidder, s/n CE4051, One Barco Loader, s/n 19208, One Prentice Loader, s/n 55109, mounted on Pitts Trailer, s/n 1PEKB4228WP980612, CTR Delimber, s/n 400412, CTR Grapple C229, s/n 44029000 and One Hydro-Ax Fellerbuncher, s/n 6603, all more thoroughly described in Schedule "A" to the Security Agreement referred to in paragraph 6 herein below (said commercial equipment being hereinafter referred to collectively as the "Equipment"). The Equipment was to be used in connection with DELENO MAX HARPER's business activities.  A true and correct copy of the Note annexed hereto, made a part hereof, and marked **Exhibit "A."**

6.  On or about  August 14, 2000, DELENO MAX HARPER, as Mortgagor, entered into and executed a Security Agreement - Mortgage on Goods and Chattels with Schedule "A" attached thereto (herein referred to collectively as the "Security Agreement"), in which OCAI is named as Mortgagee, whereby DELENO MAX HARPER granted to  OCAI  a  purchase  money  security  interest  in  the

Equipment, and a security interest in "any and all documents, instruments, chattel paper, goods, general intangibles, inventory, machinery, contract rights, equipment, fixtures, accounts and insurance in which Mortgagor now or hereafter has any right or interest," to secure the Mortgage Obligations as defined therein, including but not limited to the indebtedness of  under the Note. A true copy of the Security Agreement is annexed hereto, made part hereof and marked as **Exhibit "B".**

7.  On or about August 14, 2000, Defendant, DELENO MAX HARPER executed a Delivery/Installation Certificate, Waiver and Agreement, a true copy of which is annexed hereto, made part hereof and marked as **Exhibit "C"**, whereby said Defendant acknowledges complete and satisfactory delivery of the Equipment free from any defenses, offsets or counterclaims, which said Defendant thereby waives as against OCAI.

8.  On September 26, 2000, OCAI changed its name of record to ORIX FINANCIAL SERVICES, INC.  As a consequence of said change of name, and without limitation or restriction of any kind in law or fact, OFS succeeds to all of the rights of OCAI under the Note, the Assignment agreement referred to hereinabove and any and all agreements, contracts, instruments and other documents relating thereto.

9.  Defendant defaulted in the payments required to be made under and pursuant to the terms of the Note by failing to make the payment due thereunder on the August 01, 2001 and on the 1st day of each month thereafter, when due, and, as a result, OFS accelerated the balance owed under and pursuant to the terms of

the Note.

10.   Pursuant to the terms and conditions of the Note, subsequent to and predicated upon the above-mentioned default of Defendant under the Note, Plaintiff located and peaceably took possession of the Equipment.

11.   On October 18, 2002, OFS conducted a sale of the Equipment, upon due prior written notice thereof to the Defendants and in a commercially reasonable manner in accordance with applicable law.

12. At said sale, the Equipment was sold for a gross purchase price of $54,000.00.   The total amount of costs and expenses of the sale of the Equipment was $3,667.40.  Pursuant to the terms of the Note and applicable law, OFS is entitled to, and did, deduct said amount of its costs and expenses relating to the sale from the aforesaid gross purchase price received by it from said sale.  Consequently, a credit was applied to the account of $50,332.60.

13.   Pursuant to the terms and conditions of the Note, as of September 20, 2005, there is due and owing to OFS from DELENO MAX HARPER the sum of $171,322.55 plus late charges on payments received late in the aggregate amount of $1,360.96, plus late charges of $50,597.26, on the unpaid balance of $171,322.55 from the day after the default on August 01, 2001 to October 18, 2002 the date of sale less the resale credit of $50,332.60 totaling the sum of $172,948.17 plus default interest at the post-maturity rate set forth in the Note (1/15th of 1% per day thereon from the day after the sale on October 18, 2002 and attorneys'

fees in the amount of $34,589.63 (20% of the total balance due under the Note), no part of which has been paid, although duly demanded.

WHEREFORE, the Plaintiff, demands judgment against the Defendant as follows:

On the First Claim the sum of $171,322.55 plus late charges on payments received late in the aggregate amount of $1,360.96, plus late charges of $50,597.26, on the unpaid balance of $171,322.55 from the day after the default on August 01, 2001 to October 18, 2002 the date of sale less the resale credit of $50,332.60 totaling the sum of $172,948.17 plus default interest at the post-maturity rate set forth in the Note (1/15th of 1% per day thereon from the day after the sale on October 18, 2002 and attorneys' fees in the amount of $34,589.63 (20% of the total balance due under the Note), no part of which has been paid, although duly demanded.

Dated: Haverstraw, New York
       September 20, 2005

WILLIAM M. STEIN-WS6263
STEIN & STEIN
Attorneys for Plaintiff
One Railroad Square
Haverstraw, NY 10927
(845)  429-3900

jh9838orixfed2

# EXHIBIT "A"

# PROMISSORY NOTE

$ _286,884.00_                 GREENVILLE          ALABAMA          _8-14_ , _00_
                              (City)               (State)

AFTER DATE, FOR VALUE RECEIVED, THE UNDERSIGNED - EACH OF THEM, IF MORE THAN ONE - ("Maker") PROMISE(S) TO PAY TO

THE ORDER OF     _ORIX CREDIT ALLIANCE, INC._
                              (Name of Seller / Mortgagee / Lessor)

at any office of Orix Credit Alliance, Inc. or such other place as the Holder hereof may from time to time in writing appoint, the sum of   _TWO HUNDRED EIGHTY SIX THOUSAND EIGHT HUNDRED EIGHTY FOUR   AND  00/100_

DOLLARS ($   _286,884.00_   ) payable in consecutive monthly installments as follows:

| | | | |
|---|---|---|---|
| _36_ Installment(s), each in the amount of $ _7,969.00_ | ; then | _____ Installment(s), each in the amount of $ _____ | ; |
| then _____ Installment(s), each in the amount of $ _____ | ; then | _____ Installment(s), each in the amount of $ _____ | ; |
| then _____ Installment(s), each in the amount of $ _____ | ; then | _____ Installment(s), each in the amount of $ _____ | ; |
| then _____ Installment(s), each in the amount of $ _____ | ; then | _____ Installment(s), each in the amount of $ _____ | ; |
| then _____ Installment(s), each in the amount of $ _____ | ; then | _____ Installment(s), each in the amount of $ _____ | ; |
| then _____ Installment(s), each in the amount of $ _____ | ; then | _____ Installment(s), each in the amount of $ _____ | ; |
| then _____ Installment(s), each in the amount of $ _____ | ; then | _____ Installment(s), each in the amount of $ _____ | ; |

said consecutive monthly installments shall commence on the    _01_    day of    _SEPTEMBER_       _2000_   , and continue on the same date of each month thereafter until paid; with interest from the date hereof being payable on the unpaid amount at the maturity of each Installment, until maturity, at the rate of _0.00_ % per annum and after maturity of each Installment or the maturity of this Promissory Note or acceleration of the Indebtedness evidenced hereby, at a rate of interest equal to 1/15th of 1% per day, until this Promissory Note is paid in full, and if placed in the hands of an attorney for collection, a reasonable sum (equal to 20% of the unpaid amount) as attorneys' fees. If any Interest provided for herein shall be found to exceed the maximum permitted by applicable law, such rate shall be reduced to such maximum. Upon non-payment of any Installment or Interest when due, all remaining unpaid Indebtedness shall, at the option of the Holder and without notice or demand, become Immediately due and payable together with accrued or chargeable interest, late charges, collection charges and attorneys' fees. **THE MAKER AND ANY GUARANTOR OR ENDORSER OF THIS PROMISSORY NOTE HEREBY WAIVE PRESENTMENT FOR PAYMENT, DEMAND, PROTEST, NOTICE OF PROTEST AND NOTICE OF DISHONOR HEREOF, AND FURTHER HEREBY WAIVE ALL BENEFIT OF VALUATION, APPRAISEMENT AND EXEMPTION LAWS AND DO HEREBY DESIGNATE AND APPOINT EDWIN M. BAUM ESQ., AND C-A CREDIT CORP., BOTH OF NEW YORK, OR EITHER OF THEM, AS EACH OF SAID PARTIES TRUE AND LAWFUL ATTORNEY-IN-FACT AND AGENT FOR EACH OF SAID PARTIES AND IN EACH OF SAID PARTIES NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF NEW YORK, HOLDER AGREEING TO NOTIFY EACH OF SAID PARTIES, AT THE LAST ADDRESS KNOWN TO HOLDER FOR EACH, BY CERTIFIED MAIL, WITHIN THREE DAYS OF SUCH SERVICE HAVING BEEN EFFECTED. EACH OF SAID PARTIES AGREE TO THE EXCLUSIVE VENUE AND JURISDICTION OF ANY COURT IN THE STATE AND COUNTY OF NEW YORK REGARDING ANY MATTER ARISING HEREUNDER WITH THE SOLE EXCEPTIONS THAT AN ACTION TO RECOVER POSSESSION OF ANY ASSETS OF THE MAKER OR ANY GUARANTOR OR ENDORSER, HOWEVER DENOMINATED, MAY, IN THE SOLE DISCRETION OF HOLDER, BE BROUGHT IN A STATE OR FEDERAL COURT HAVING JURISDICTION OVER SUCH ASSETS, AND THAT JUDGMENTS MAY BE CONFESSED, ENTERED, OR ENFORCED IN ANY JURISDICTION WHERE THE MAKER OR ANY GUARANTOR OR ENDORSER OR SUCH ASSETS MAY BE LOCATED. THE MAKER AND ANY GUARANTOR OR ENDORSER FURTHER WAIVE ANY RIGHT THEY, OR ANY OF THEM, MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT IN ACCORDANCE HEREWITH.** The Maker and any Guarantor or Endorser further agree that the validity, enforceability and effectiveness of each provision hereof and the obligations, rights and remedies of each of them in any way relating to or arising under this Promissory Note shall be governed and construed in accordance with the laws of the State of New York (excluding its choice of law rules). Maker and any Guarantor or Endorser hereby irrevocably authorize any attorney of any court of record to appear for and confess judgment against such Maker, Guarantor or Endorser (except in any jurisdiction where such action is not permitted by law) for all sums due hereunder to Holder, including expenses and 20% added for attorneys' fees, without stay of execution. The Holder may extend the time of payment of this Promissory Note, postpone the enforcement hereof, grant any other Indulgence and add or release any party primarily or secondarily liable hereon without affecting or diminishing the Holder's right of recourse against the Maker or any Guarantor or Endorser of this Promissory Note, which right is hereby expressly reserved.

Co-Maker_____          DELENO MAX HARPER _____ (SEAL)

_____              _____
        (Witness for Maker and Co-Maker)                      (Authorized Signature)

PN(I-98).FXD                                                                    NET 9.01

# EXHIBIT "B"

# SECURITY AGREEMENT-MORTGAGE ON GOODS AND CHATTELS

**THIS MORTGAGE** made the **14** day of **August, 2000**, by and between

(Name of Mortgagor)

DELENO MAX HARPER

(Address of Mortgagor)

2073 FORT DALE ROAD          GREENVILLE          ALABAMA          36037-4128

"Mortgagor", and          ORIX CREDIT ALLIANCE, INC.
                          125 TOWNPARK DRIVE SUITE# 100          KENNESAW          GEORGIA          30144          "Mortgagee";

[ If Mortgagee named above is not ORIX Credit Alliance, Inc., Mortgagor acknowledges notice of the intended assignment hereof to ORIX Credit Alliance, Inc. (said assignee hereinafter called "Mortgagee") and upon such assignment, Mortgagor agrees not to assert against Mortgagee any defense, set-off, recoupment, claim or counterclaim which Mortgagor may have against the Mortgagee named above and any assignee hereof prior to Mortgagee, whether arising hereunder or otherwise. ]

## WITNESSETH:

1. To secure the prompt payment, with interest thereon, performance and fulfillment of any and all Mortgage Obligations (as hereinafter defined) of Mortgagor to Mortgagee, which is hereby confessed and acknowledged, Mortgagor hereby grants, assigns, transfers, bargains, conveys, confirms, pledges, mortgages and grants to Mortgagee a security interest in all and singular, the goods, chattels and property described in the annexed Schedule A and any and all documents, instruments, chattel paper, goods, general intangibles, inventory, machinery, contract rights, equipment, fixtures, accounts, insurance and all other property and assets of every kind and nature in which Mortgagor now or hereafter has any right or interest (all of the foregoing, together with all accessions, attachments, replacements, substitutions and accessories thereto now or hereafter belonging to Mortgagor, wherever located, and all proceeds, and any distribution thereof and any insurance thereon, products and rents therefrom collectively called "Collateral"), to have and to hold the same unto Mortgagee forever; provided, however, that if Mortgagor shall fully, timely and faithfully pay, perform and fulfill the Mortgage Obligations, time being of the essence hereof, then this Mortgage shall be void, but otherwise shall remain in full force and effect. Mortgagor grants Mortgagee a security interest in the Collateral to secure the Mortgage Obligations.

2. The term "Mortgage Obligations" as used herein shall mean and include any and all loans, advances, payments, extensions of credit, endorsements, guaranties, benefits and financial accommodations heretofore and/or hereafter made, granted or extended by Mortgagee or which Mortgagee has or will become obligated to make, grant or extend to or for the account of Mortgagor, and any and all interest, commissions, obligations, liabilities, indebtedness, charges and expenses heretofore and/or hereafter chargeable against Mortgagor by Mortgagee or owing by Mortgagor to Mortgagee or upon which Mortgagor may be and/or has become liable as endorser or guarantor, and any and all renewals or extensions of any of the foregoing, no matter how or when arising and whether under any present or future agreement or instrument between Mortgagor and Mortgagee or otherwise, including, without limitation, any and all indebtedness and/or indebtedness of any and every kind arising out of one or more conditional sale contracts, equipment lease agreements, notes, security agreements, trust receipts and/or bailment agreements and the amount due upon any notes or other obligations, given to or received by Mortgagee directly from Mortgagor or by way of assignment from any one or more third parties and whether or not presently contemplated by the parties, and for or on account of any of the foregoing, and the prompt performance and fulfillment by Mortgagor of all of the terms, conditions, promises, covenants, provisions and warranties contained in this Mortgage and in any note or notes secured hereby and in any present or future agreement or instrument between Mortgagor and Mortgagee.

3. Mortgagor covenants and warrants to Mortgagee and agrees that the Collateral described in the annexed Schedule A is in the possession of Mortgagor at its principal place of business (which is Mortgagor's address shown above), unless a different location is specifically shown on Schedule A for any one or more items, that all of the Mortgage Obligations are acknowledged and declared to be secured by this Mortgage and that Mortgagor will fully and faithfully pay, perform and fulfill all of the Mortgage Obligations, with interest thereon from and after maturity of any unpaid installment of the Mortgage Obligations, whether by acceleration or otherwise, at the rate of 1/15th of 1% per day (the "Past Due Rate") until the Mortgage Obligations are collected by the Mortgagee in full, provided, however, that in no event shall either any late charge or the Past Due Rate under any Mortgage Obligation or hereunder exceed any maximum permitted by law. If all or any portion of the Mortgage Obligations be referred to an attorney for collection, there shall also be due a reasonable sum (equal to 20% of the unpaid amount of such Mortgage Obligations) as attorneys' fees. If for any reason any interest rate, late charge, fee or other charge imposed or which may be imposed under any Mortgage Obligation exceeds the maximum amount which may be imposed under applicable law, the amount of such interest rate, late charge, fee or other charge in excess of the maximum shall be void and any such excess collected by Holder shall be applied to the reduction of such Mortgage Obligation or, to the extent permitted by applicable law, to such other obligations of the Mortgagor at the time owing to Holder as Holder may determine, and any remaining excess shall be refunded to Mortgagor. Mortgagor further covenants and agrees with and warrants to Mortgagee that:

   (a) Mortgagor is the lawful owner of the Collateral and represents and warrants to Mortgagee that Mortgagor has paid all applicable sales, use or other taxes due in connection with the sale, purchase, ownership, possession or use of the Collateral and shall indemnify Mortgagee from and against any loss, cost or expense, including penalties, interest and other charges of any kind in connection with or arising from the sale, purchase, ownership, possession or use of the Collateral, and has the sole right and lawful authority to make this Mortgage; the Collateral and every part thereof is free and clear of all liens and encumbrances of every kind, nature and description (except any held by Mortgagee); and Mortgagor will warrant and defend the Collateral against all claims and demands of all persons and will not permit any circumstances to exist under which the Mortgagee may lose its lien on the Collateral.

   (b) Mortgagor will keep the Collateral free and clear of all attachments, levies, taxes, liens and encumbrances of every kind; Mortgagor, at its own cost and expense, will maintain and keep the Collateral in good repair, will not waste nor abuse nor destroy the same or any part thereof and will not be negligent in the care and use thereof; and Mortgagor will not sell, assign, mortgage, lease, pledge or otherwise dispose of the Collateral without the prior written consent of Mortgagee. Mortgagee is hereby authorized to file one or more financing statements and/or a reproduction hereof as a financing statement. Mortgagor hereby irrevocably appoints Mortgagee as the true and lawful Attorney-in-Fact of Mortgagor, coupled with an interest, with full power in Mortgagor's name, place and stead to execute financing statements on Mortgagor's behalf and to do any and all other acts on Mortgagor's behalf necessary or helpful to perfect Mortgagee's security interest in the Collateral pursuant to the Uniform Commercial Code or other applicable law.

   (c) Mortgagor will insure the Collateral in the name of the Mortgagee against loss or damage by fire and extended coverage perils, theft, burglary, pilferage, collision and also, where requested by Mortgagee, against other hazards, with companies, in amounts and under policies (each containing a standard breach of warranty clause) acceptable to Mortgagee, the proceeds to be payable to Mortgagee, and all premiums thereon shall be paid by Mortgagor and the policies assigned and delivered to Mortgagee. Mortgagee shall have the right, but not the obligation, to provide insurance for its interest and charge Mortgagor Mortgagee's cost for such insurance, together with it or its designee's customary charges or fees associated with its insurance. Mortgagor hereby irrevocably appoints Mortgagee as Mortgagor's Attorney-in-Fact to make claim for, receive payment of and execute and endorse all documents, checks or drafts received in payment for any loss or damage under any of said insurance policies and to execute any documents or statements referred to herein.

   (d) Mortgagor will not remove the Collateral from within the 48 contiguous States of the United States or its present locations without the prior written consent of Mortgagee nor change its present business locations without at least thirty days prior written notice to Mortgagee and at all times will allow Mortgagee or its representatives free access to and right of inspection of the Collateral, which shall remain personalty and not become a part of any realty, and nothing shall prevent Mortgagee from removing same or so much thereof as Mortgagee, in its sole discretion may determine, from any premises to which it may be attached and/or upon which it may be located upon breach of this Mortgage; Mortgagor agreeing to deliver to Mortgagee appropriate waivers, satisfactory to Mortgagee, of owners and of mortgagees of any such premises.

   (e) Mortgagor shall comply (so far as may be necessary to protect the Collateral and the lien of this Mortgage thereon) with all of the terms and conditions of leases covering the premises wherein the Collateral may be located and with any orders, ordinances, laws or statutes of any city, state or other entity having jurisdiction over the premises or the conduct of business thereon, and, when requested by Mortgagee, will correct any defects or execute any written instruments and do any other acts necessary to more fully effectuate the purposes and provisions of this instrument.

   (f) Mortgagor will indemnify and save Mortgagee harmless from all losses, costs, damages, liabilities or expenses, including reasonable attorneys' fees, that Mortgagee may sustain or incur to obtain or enforce payment, performance or fulfillment of any of the Mortgage Obligations or in the enforcement or foreclosure of this Mortgage or in the prosecution or defense of any action or proceeding either against Mortgagor or against Mortgagee concerning any matter growing out of or connected with this Mortgage and/or any of the Mortgage Obligations and/or any of the Collateral.

   (g) If Mortgagor is a corporation, the execution of this Mortgage has been duly consented to and authorized by all of the stockholders of Mortgagor and duly authorized by its Board of Directors. Mortgagor agrees to deliver to Mortgagee evidence thereof satisfactory to Mortgagee immediately upon request.

4. If Mortgagor shall default in the full, prompt and faithful performance of any of the terms, conditions and provisions of this Mortgage, Mortgagee may, at its option, without waiving its right to enforce this Mortgage according to its terms, immediately or at any time thereafter, and without notice to or demand upon Mortgagor, perform or cause the performance of such, for the account and at the sole cost and expense of Mortgagor, which (including reasonable attorneys' fees) shall be a lien on the Collateral, added to the amount of the Mortgage Obligations, without notice to Mortgagor, and shall be payable on demand with interest at the Past Due Rate. This Mortgage may be assigned along with any and all Mortgage Obligations, without notice to Mortgagor, and in such event Mortgagor agrees not to assert against any assignee hereof any defense, set-off, recoupment, claim, counterclaim or cross-claim which Mortgagor may have against Mortgagee, whether arising hereunder or otherwise, and such assignee shall be entitled to at least the same rights as Mortgagee. **MORTGAGOR AND MORTGAGEE HEREBY DESIGNATE AND APPOINT EDWIN M. BAUM, ESQ. AND C-A CREDIT CORP., BOTH OF NEW YORK, OR EITHER OF THEM AS THEIR TRUE AND LAWFUL ATTORNEY-IN-FACT AND AGENT FOR THEM AND IN THEIR NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF NEW YORK, THE PARTY CAUSING SUCH PROCESS TO BE SERVED AGREEING TO NOTIFY THE OTHER PARTY(IES) AT THEIR ADDRESS AS SHOWN, OR THEIR LAST KNOWN ADDRESS, BY CERTIFIED MAIL, WITHIN THREE (3) DAYS OF SUCH SERVICE HAVING BEEN EFFECTED. MORTGAGOR AND MORTGAGEE HEREOF AGREE TO THE EXCLUSIVE VENUE AND JURISDICTION OF ANY COURT IN THE STATE AND COUNTY OF NEW YORK FOR ALL ACTIONS, PROCEEDINGS, CLAIMS, COUNTERCLAIMS OR CROSSCLAIMS ARISING DIRECTLY OR INDIRECTLY OUT OF, UNDER, IN CONNECTION WITH, OR IN ANY WAY RELATED TO THIS MORTGAGE WHETHER BASED IN CONTRACT OR IN TORT, OR AT LAW OR IN EQUITY OR PURSUANT TO STATUTE, WITH THE SOLE EXCEPTIONS THAT AN ACTION TO OBTAIN, REMOVE POSSESSION OF ALL OR PART OF THE COLLATERAL AND EQUITABLE PROCEEDINGS TO ENFORCE THE TERMS OF THIS MORTGAGE MAY, IN THE SOLE DISCRETION OF MORTGAGEE, BE BROUGHT IN A STATE OR FEDERAL COURT HAVING JURISDICTION OVER THE COLLATERAL, AND/OR THE MORTGAGOR, AS THE CASE MAY BE, AND THAT JUDGMENTS MAY BE CONFESSED, ENTERED, OR ENFORCED IN ANY JURISDICTION WHERE THE MORTGAGOR OR THE COLLATERAL AND/OR ANY OTHER ASSETS OF THE MORTGAGOR MAY BE LOCATED. MORTGAGOR AND MORTGAGEE EACH WAIVE ANY RIGHT THEY OR ANY OF THEM MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT IN ACCORDANCE HEREWITH.** At Mortgagee's request Mortgagor will furnish current financial statements satisfactory to Mortgagee in form, preparation and content.

5. If Mortgagor shall default in the prompt payment, performance or fulfillment of any of the Mortgage Obligations, or if Mortgagor shall cease doing business, or become insolvent, or make an assignment for the benefit of creditors, or if proceedings under any Bankruptcy Act or for the appointment of a receiver, trustee, liquidator or custodian for Mortgagor or any of Mortgagor's property shall be commenced by or against Mortgagor, or if Mortgagor shall fail to punctually and faithfully fulfill, observe or perform any of the terms, conditions, promises, covenants, provisions and warranties contained in this Mortgage or in any present or future agreement or instrument made by Mortgagor and then held by Mortgagee, or if any of the warranties, covenants or representations made to Mortgagee be or become untrue or incorrect in any adverse respect, or if there shall be a change in the management, operations, ownership of stock or control of Mortgagor, or if Mortgagee at any time shall deem the Collateral in danger of misuse, concealment, mis-appropriation or seizure or if Mortgagor shall determine that the prospect of payment or performance of the Mortgage obligations is impaired, then in any such event the indebtedness under all Mortgage Obligations shall at once, at the option of Mortgagee, and to the extent permitted by applicable law, become immediately due and payable without notice to Mortgagor, and in such event it shall be lawful for Mortgagee to take possession of the Collateral, at its sole discretion, wherever it may be, and to enter any premises without causing a breach of peace with or without process of law, and search for, take possession of, remove, or keep and store the Collateral on said premises until sold, without liability for trespass or charge for storage, and to sell the Collateral or any part thereof and all of Mortgagor's equity of redemption therein at public or private sale, for cash or on credit, and on such terms as Mortgagee may in its sole discretion elect, in such county and at such place as Mortgagee may in its sole discretion elect at the place of sale. Mortgagee may bid or become the purchaser at any such sale and Mortgagor waives any and all rights of redemption from any such sale. Any public sale will be deemed commercially reasonable if notice thereof shall be mailed to Mortgagor at least 10 days before such sale and advertised in at least one newspaper of general circulation in the area of the sale at least twice prior to the date of sale and if upon terms of 25% cash down with the balance payable within 24 hours; and any private sale shall be deemed commercially reasonable if notice thereof shall be mailed to Mortgagor at least 14 days before the sale date stated therein and credit given for the full price stated, less reasonable attorneys' fees. In light of Mortgagor's obligations to maintain the Collateral, Mortgagor shall not be required to refurbish, repair or otherwise incur any expenses in preparing Collateral for sale but may sell its interest therein on an "as-is", "where-is" basis. The proceeds of any public sale shall be applied first to pay all costs, expenses and charges for pursuing, searching, taking, removing, keeping, advertising and selling the Collateral, including reasonable attorneys' fees (deemed to be 20% of the unpaid Mortgage Obligations) and second to the payment, partly or entirely, of any of the Mortgage Obligations as Mortgagee may in its sole discretion elect, returning the overplus, if any, to Mortgagor, who shall remain liable to Mortgagee for any deficiency plus interest thereon at the Past Due Rate. Mortgagor hereby irrevocably consents to the appointment of a receiver for the Collateral and/or all other property of Mortgagor, and of the rents, issues and profits thereof. Such receivership may continue until such deficiency is satisfied in full. Mortgagor expressly waives any right to notice or hearing in any action to recover

CM(09-98)-IND          **ORIGINAL FOR ORIX CREDIT ALLIANCE, INC.**          NET 9.01

possession of any or all of the Collateral. In any action in the nature of replevin or sequestration, Mortgagor agrees that if it contests such action it will post a bond written by a national insurance company authorized to execute such bonds in the jurisdiction of such proceedings, such bond to be no less than the value of the subject matter of such replevin or the unpaid balance then owing to Mortgagee, whichever be less. Mortgagor hereby irrevocably authorizes any attorney of any court of record to appear for and confess one or more judgments against Mortgagor (except in any jurisdiction where such action is not permitted by law) for all amounts owing under the Mortgage Obligations, any other monies due hereunder, plus reasonable attorneys' fees and any deficiency, without stay of execution, and waive the issue of process, all right of appeal and relief from any and all appraisement, stay or exemption laws then in force. Any notices relating hereto shall be in writing and effective when delivered in person to an officer of the party to whom addressed or mailed by certified mail to such party at its address specified herein or at such other address as may hereafter be specified by like notice by either party to the other. Reasonable notification hereunder shall be any notification given or sent at least five (5) days prior to the event for which such notification is sent. **TO THE MAXIMUM EXTENT PERMITTED BY LAW, MORTGAGOR AND MORTGAGEE EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (A) ANY AND ALL RIGHT TO A TRIAL BY JURY OF ANY AND ALL CLAIMS, DEFENSES, COUNTERCLAIMS, CROSSCLAIMS AND SETOFF OR RECOUPMENT CLAIMS ARISING EITHER DIRECTLY OR INDIRECTLY OUT OF, UNDER, IN CONNECTION WITH, OR IN ANY WAY RELATED TO THE MORTGAGE OBLIGATIONS AND WHETHER BASED IN CONTRACT OR IN TORT OR PURSUANT TO STATUTE AND (B) ANY AND ALL RIGHT TO CLAIM OR RECOVER ANY PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.**

6. Mortgagee may at any time, with or without exercising any of the rights or remedies aforesaid and without prior notice or demand to Mortgagor, appropriate and apply toward the payment of the Mortgage Obligations any and all balances, sums, property, credits, deposits, accounts, reserves, collections, drafts, notes or checks coming into Mortgagee's possession and belonging or owing to Mortgagor, and for such purposes, endorse the name of Mortgagor on any such instrument made payable to Mortgagor for deposit, negotiation, discount or collection. Such applications may be made, or any monies paid to Mortgagee may be applied, without notice to Mortgagor, partly or entirely to such of the Mortgage Obligations as Mortgagee in its sole discretion may elect. In its sole discretion Mortgagee may apply and/or change applications of any sums paid and/or to be paid by or for Mortgagor, under any circumstances, to any obligations of Mortgagor to Mortgagee, presently existing or otherwise. The interest rates which may be provided for in any instrument evidencing one or more Mortgage Obligations shall in no event, circumstance or contingency, exceed any maximum permitted by applicable law.

7. If, after default by Mortgagor under the Mortgage Obligations, Mortgagee fails to demand full payment, performance or fulfillment or otherwise proceed, such failure shall not be deemed a waiver of the right of Mortgagee subsequently to make demand for immediate payment, performance and fulfillment of the Mortgage Obligations, or to take immediate possession of the Collateral, or to foreclose this Mortgage at any time or to proceed otherwise; and the acceptance by Mortgagee of any payment subsequent to such default shall not be deemed a waiver of any of Mortgagee's rights. No delay or failure on the part of Mortgagee in exercising any right, privilege, remedy or option hereunder shall operate as a waiver of such or of any other right, privilege, remedy or option, and no waiver whatever shall be valid unless in writing, signed by an officer of Mortgagee and then only to the extent therein set forth. This Mortgage cannot be changed or terminated orally. The books and records of Mortgagee containing entries with respect to the Mortgage Obligations shall be admissible in evidence in any action or proceeding, shall be binding upon the Mortgagor for the purpose of establishing the items therein set forth and shall constitute prima facie proof thereof. Mortgagee shall have the right to enforce any one or more remedies available to it successively, alternately or concurrently. Only a writing, signed by an officer of Mortgagee, shall be effective, but only to the extent therein specifically set forth, to change, modify or terminate any Mortgage Obligation, this Mortgage or any other agreement between Mortgagor and Mortgagee.

8. All of the rights, remedies, options, privileges and elections given to the original Mortgagee hereunder shall enure to the benefit of Mortgagee, any transferee or holder of this Mortgage, and their respective successors and assigns; and all the terms conditions, promises, covenants, provisions and warranties of this Mortgage shall enure to the benefit of and shall bind the representatives, successors and assigns of the respective parties. Any and all security interests granted to Mortgagee shall attach to any and all proceeds and products. Each person signing this Mortgage warrants full authority to sign for the party named and said person, individually, together with the party named, shall be jointly and severally liable for the unpaid balance of the Mortgage Obligations in the event of the breach of the above provisions and/or in the event Mortgagor fails to pay its obligations in full to Mortgagee Immediately upon the sale, transfer, assignment or conversion of any of the Collateral and agrees that upon the request of Mortgagee, after any default, to segregate and hold all or any part of the Collateral in a fiduciary capacity and to adequately maintain, service and insure said property and to protect same from use and/or abuse, all without charge to Mortgagee, such fiduciary duty to terminate only upon the actual delivery of the Collateral to Mortgagee. Mortgagor, recognizing that in the event of default no remedy at law would provide adequate relief to Mortgagee, agrees that Mortgagee shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damages.

9. Some of the Collateral may be in the hands of Mortgagor under one or more security agreements which are or may be held by Mortgagee and with respect to such Collateral, this Mortgage is only of any equity that Mortgagor may now or in the future have in such Collateral and Mortgagee by accepting this Mortgage shall not in any manner be considered as having waived any security interest arising independently of this Mortgage nor shall this Mortgage be construed as adversely affecting any rights of Mortgagee under any other security agreement nor as a waiver of any of the terms and provisions of any other security agreement, guaranty or endorsement, all of which shall remain and continue in full force and effect.

10. Intending that each and every provision of this Mortgage be fully effective and enforceable according to its terms, the parties agree that the validity, enforceability and effectiveness of each provision hereof and the obligations, rights and remedies of the Mortgagor and Mortgagee in any way related to or arising under this Mortgage or under one or more Mortgage obligation shall be governed by and construed in accordance with the laws of the State of New York (excluding its choice of law rules), if any one or more provisions hereof are in conflict with any statute or law and thus not valid or enforceable, then each such provision shall be deemed null and void but only to the extent of such conflict and without invalidating or affecting the remaining provisions hereof. This contract shall be binding upon the heirs, administrators, legal representatives and successors of the Mortgagor.

11. **MORTGAGOR DOES HEREBY WAIVE, FOREGO AND AGREE NOT TO ASSERT ANY AND ALL RIGHTS, CLAIMS AND DEFENSES, IF ANY, UNDER THE FEDERAL FAIR CREDIT REPORTING ACT AND/OR UNDER ANY COMPARABLE STATE LAWS THAT MAY INURE TO THE BENEFIT OF MORTGAGOR IN CONNECTION WITH THIS MORTGAGE. MORTGAGOR HEREBY RATIFIES AND APPROVES THE OBTAINING BY MORTGAGEE OF ANY CREDIT REPORT RELATING TO MORTGAGOR AND HEREBY AGREES THAT MORTGAGEE MAY HEREAFTER OBTAIN SUCH CREDIT REPORTS AS MORTGAGEE IN ITS SOLE DISCRETION MAY DETERMINE.**

IN WITNESS WHEREOF, Mortgagor has caused these presents to be duly executed, the day and year first above written.

DELENO MAX HARPER

_____ (Seal)

ATTEST/WITNESS:

(Mortgagor)  By _____

_____
(Secretary/Witness)                                      (Title)

STATE OF _____
COUNTY OF _____  } S.S.

_____, being duly sworn, deposes and says:

1. He is the _____ of _____ (hereinafter called "Mortgagor") described in and which executed the foregoing Mortgage.

2. Mortgagor is the sole owner and in possession of the goods, chattels and property mentioned and described in the foregoing Mortgage. Said goods, chattels and property are free of all liens and encumbrances of any kind, nature and description (except for any held by the Mortgagee referred to below), and Mortgagor has the sole right and lawful authority to mortgage the same.

3. Mortgagor is solvent and justly indebted to the mortgagee named in the foregoing Mortgage (hereinafter called "Mortgagee") in the amount of the aggregate sum of the Mortgage Obligations outstanding on the date hereof, and there are no claims, off-sets or defenses against same.

4. There are no judgments against Mortgagor, and no attachment or execution is now outstanding against any of Mortgagor's property, no receiver of Mortgagor has ever been appointed or applied for. There are no proceedings in bankruptcy pending affecting Mortgagor, nor have there ever been any such proceedings affecting Mortgagor, and no assignment for the benefit of creditors has been made by Mortgagor.

5. Deponent makes this affidavit realizing that Mortgagee is being induced thereby to extend credit to and/or accept Mortgagor as a credit risk in reliance upon the truth of the statements contained therein, and this affidavit is made to induce Mortgagee to do so.

Sworn to before me this ____ day of _____, _____

_____
NOTARY PUBLIC

(Notarial Seal)

_____
(Signature)

State of _____, County of _____, SS:

_____, a Notary Public duly qualified in and for said County and state, do hereby certify that on this ____ day of _____, _____ in (Place) _____ in said County, before me personally appeared _____, to me personally well known

as and to be the identical person named and described in and party to and who executed in his own proper handwriting and whose name is subscribed to the within and foregoing and annexed instrument of writing bearing date as therein indicated, and produced and delivered the same before me and who, upon being first duly sworn by me, stated that he knows the contents of said instrument and acknowledged that he signed, sealed, executed and delivered the same as and to be his free, lawful and voluntary act and deed for the uses, purposes and consideration therein mentioned and contained.

Given under and witness my hand and offical seal the day and year in this certificate first above written.

_____

_____
(Notarial Seal)                                   NOTARY PUBLIC

# SCHEDULE "A"

This schedule is attached to and becomes part of Promissory Note with Security Agreement, or Security Agreement, Conditional Sale Contract, Lease, or _____ dated  7/25  , 2000  between the undersigned.

| QUANTITY | DESCRIPTION OF PROPERTY (Indicate Whether "NEW"or"USED") | Year & Model | Serial No. |
|----------|----------------------------------------------------------|--------------|------------|
|  | JOHN DEERE SKIDDER | 648G | 560060 |
|  | TIMBERJACK SKIDDER | 380C | CE4051 |
|  | BARKO LOADER | 160B | 19208 |
|  | PRENTICE LOADER<br>MOUNTED ON PITTS TRAILER<br> S/N:1PEKB4228WP980612, CTR<br>DELIMBER S/N:400412, CTR<br> GRAPPLE C229<br> S/N:44029000 | 210E | 55109 |
|  | HYDRO-AX FELLERBUNCHER<br>W/ 18'' KOEHRING SAWHEAD,<br>CAB W/ HEAT & AIR | 321 | 6603 |

This schedule is hereby verified correct and undersigned Mortgagor(s), Buyer(s), Maker(s) or Lessee(s) acknowledges receipt of a copy this  14  day of  August  ,  2000 .

Mortgagee/Seller/Lessor/Holder:

    ORIX CREDIT ALLIANCE, INC.

By: _____

Mortgagor/Buyer/Lessee/Maker:

    DELENO MAX HARPER

By: *Deleno Max Harper*

SCHED.A(1-98)                                                                NET 9.01

# EXHIBIT "C"

## DELIVERY/INSTALLATION CERTIFICATE, WAIVER AND AGREEMENT

....... 2073 FORT DALE ROAD ....... GREENVILLE ..... ALABAMA ...... 36037-4128 .......... 8/14/00
(Equipment Location)    (Street)    (City)    (State)    (Zip)    (Date)

To: ...... ORIX CREDIT ALLIANCE, INC. ..................................

..........................................................................(Seller/Lessor/Mortgagee)

....... 125 TOWNPARK DRIVE SUITE# 100 ...... KENNESAW ..... GEORGIA ...... 30144 ..............
(No.)    (Street)    (City)    (State)

We hereby acknowledge complete and satisfactory delivery / installation of the property described in the agreement between us dated
......... 8/14/00 ..............and notice of your intention to sell such agreement and our note(s) to ORIX Credit Alliance, Inc. In order to induce ORIX
Credit Alliance, Inc. to purchase such agreement and note(s)  we represent to it that the same are free from any defenses, offsets or counterclaims and we
hereby waive any claim or offset as against ORIX Credit Alliance, Inc. and recognize its right to enforce such agreement and note(s) according to their terms
free from any defenses, offsets or counterclaims.

DELENO MAX HARPER .............................................
..........................................................................(Buyer/Lessee/Mortgagor)

2073 FORT DALE ROAD ...... GREENVILLE ..... ALABAMA ...... 36037-4128 ..............
..........................................................................(Address)

By: .................................................................
..........................................................................(Owner/Partner or Officer)

D/I/S(1-98)                                                                                      NET 9.01

# EXHIBIT "2"

```
REPORT: RPT101                                                    PAGE        1
PROGRAM: RPRP01                                                   RUN DATE 1/06/06
CONTRACT: 999-A    C-27-00237
4KR- DELENO MAX HARPER        DBA
DELENO MAX HARPER
DLR- ATLANTA DIRECT TRANSACTIONS
```

**P A Y M E N T   H I S T O R Y**

ORIG NOTE:     $286,884.00     ORIG.DUE 036:000     EQUIP CODE   452
                                FIRST PAY   9/01/00   LOCATION     AL
                                MATURITY    8/01/03

| SCHEDULE DATE | SCHEDULE PAYMENT | SCHEDULE BALANCE | PAYMENT AMOUNT | N/R BALANCE | CASH PAYMENT DATE |
|---|---|---|---|---|---|
| 12/01/00 | 7,969.00 | 255,008.00 | 11,736.69- | 247,440.62 | 11/22/00 |
|  |  |  | 7,969.00- | 247,039.00 | 11/03/00 |
| 1/01/01 | 7,969.00 | 247,039.00 | 401.62- |  |  |
| 2/01/01 | 7,969.00 | 239,070.00 | 7,969.00- | 239,070.00 | 2/15/01 |
|  |  |  | 975.00- | 238,095.00 | 3/14/01 |
|  |  |  | 705.00- | 237,390.00 | 3/23/01 |
|  |  |  | 949.00- | 236,441.00 | 4/09/01 |
|  |  |  | 1,003.00- | 235,438.00 | 4/16/01 |
| 3/01/01 | 7,969.00 | 231,101.00 | 1,500.00- | 233,938.00 | 4/20/01 |
|  |  |  | 1,500.00- | 232,438.00 | 4/27/01 |
|  |  |  | 1,425.00- | 231,013.00 | 5/07/01 |
|  |  |  | 300.00- | 230,713.00 | 5/14/01 |
|  |  |  | 1,567.00- | 229,146.00 | 5/21/01 |
|  |  |  | 1,460.00- | 227,686.00 | 6/04/01 |
|  |  |  | 2,285.00- | 225,401.00 | 6/12/01 |
| 4/01/01 | 7,969.00 | 223,132.00 | 1,000.00- | 224,401.00 | 6/26/01 |
|  |  |  | 1,325.00- | 223,132.00 | 7/11/01 |
|  |  |  | 1,325.00- | 221,807.00 | 7/13/01 |
|  |  |  | 2,719.00- | 219,982.00 | 7/27/01 |
|  |  |  | 2,100.00- | 217,882.00 | 7/27/01 |
| 5/01/01 | 7,969.00 | 215,163.00 | 1,825.00- | 219,901.00 | 8/06/01 |
|  |  |  | 1,000.00- | 218,001.00 | 8/06/01 |
|  |  |  | 1,200.00- | 215,163.00 | 7/31/01 |
|  |  |  | 2,000.00- | 216,863.00 | 8/27/01 |
|  |  |  | 1,800.00- | 212,863.00 | 8/16/01 |
|  |  |  | 1,800.00- | 210,863.00 | 9/07/01 |
| 6/01/01 | 7,969.00 | 207,194.00 | 1,000.00- | 209,063.00 | 9/25/01 |
|  |  |  | 1,000.00- | 207,263.00 | 10/12/01 |
|  |  |  | 1,000.00- | 207,263.00 | 10/12/01 |
|  |  |  | 1,000.00- | 206,263.00 | 10/25/01 |
|  |  |  | 1,000.00- | 205,263.00 | 10/25/01 |
|  |  |  | 1,000.00- | 204,263.00 | 11/06/01 |
|  |  |  | 1,000.00- | 203,263.00 | 11/06/01 |
|  |  |  | 1,000.00- | 202,263.00 | 12/26/01 |
|  |  |  | 1,000.00- | 201,263.00 | 1/14/02 |
|  |  |  | 1,200.00- | 201,063.00 | 1/30/02 |
|  |  |  | 1,000.00- | 200,063.00 | 2/12/02 |
| 7/01/01 | 7,969.00 | 199,225.00 | 1,125.00- | 198,938.00 | 2/22/02 |
|  |  |  | 1,600.00- | 197,338.00 | 3/06/02 |
|  |  |  | 1,000.00- | 196,338.00 | 4/01/02 |
|  |  |  | 1,000.00- | 195,338.00 | 4/05/02 |
| 8/01/01 | 7,969.00 | 191,256.00 |  |  |  |
| 9/01/01 | 7,969.00 | 183,287.00 |  |  |  |
| 10/01/01 | 7,969.00 | 175,318.00 |  |  |  |
| 11/01/01 | 7,969.00 | 167,349.00 |  |  |  |
| 12/01/01 | 7,969.00 | 159,380.00 |  |  |  |
| 9/01/00 | 7,969.00 | 278,915.00 | 7,969.00- | 278,915.00 | 8/30/00 |
| 10/01/00 | 7,969.00 | 270,946.00 | 7,969.00- | 270,946.00 | 10/02/00 |
| 11/01/00 | 7,969.00 | 262,977.00 | 7,969.00- | 262,977.00 | 10/30/00 |
|  |  |  | 3,799.69- | 259,177.31 | 11/15/00 |

...vise that the above quoted figures are unaudited and computer generated and therefore
...subject to error, it is provided, upon your request, for information only and should
...used in determining the balance outstanding under the Contract. Nothing in this report
...amends or waives any of the terms and conditions of the Contract, nor does anything
...report grant any right to prepay or indicate any method to calculate any prepayment
...provided for in the Contract or under applicable law.

# EXHIBIT "3"

# DEFICIENCY CALCULATION WORKSHEET

| | | |
|---|---|---|
| Federal ID # | | Sale Date: | 10/18/2002 |
| | 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 Deleno Max Harper | Account No.: | C27-00237/503-10673 |
| *SSN/EIN # | | | |
| *(Required prior to submission) | | | |
| Buyer/Lessee/Maker: | Deleno Max Harpre | | |
| Equipment Description: | 1997 John Deere Skidder S/N 560060, Prentice Loader S/N 55109, Hydro Fellerbuncher S/N 6284 | | |

**I. A.) Unpaid Balance**                                            $    195,338.00
Less: Discount or Refund from Date
of Default (if applicable):        8/1/2001             $     24,015.45

Discounted Balance                                     $    171,322.55

Plus: Purchase Option (if applicable)      $       -    $          -

**Total: Discounted Balance + Purchase Option**        $    171,322.55

**B.) Plus: Pre-Default Late Charges/Interest:**
Day Basis:                        360
i.) On scheduled payments at %         24.00%        $      1,360.96
prior to Date of Default (from AS406)

Calculate manually:
ii.) On scheduled payment at           0.00%         $          -
on even payment of:               $       -
for # DAYS past due:
Less: Late Charges/Interest Paid:  $       -

iii.) On scheduled payment at          0.00%         $          -
on even payment of:               $       -
for # MONTHS past due:
Less: Late Charges/Interest Paid:  $       -

iv.) Uneven Payment Stream at:         0.00%

v.) Late Charges at                    $       -     $          -
for # MONTHS past due:            0
Less: Late Charges/Interest Paid:  $       -

**C.) Plus: Post-Default Late Charges/Interest:**
Days from date of default to date of sale:  443

i.) Late Charges/Interest at           24.00%        $     50,597.26
on Unpaid Balance from, the day
after default, to the date of sale

ii.) Late Charges/Interest at          0.00%         $          -
of payment of:                    $       -
for # DAYS past due:

iii.) Late Charges/Interest at                       $          -
of payment of:
for # MONTHS past due:            15

iv.) Late Charges at                   $       -     $          -
for # MONTHS past due:            15

**D.) Less: Collateral Reserve Balance**             $          -
(if applicable)
**E.) Plus: Personal Property Tax**
(if applicable)
**F.) Plus: Sales/Use Tax of:**          0.000%      $          -
(if applicable)
**G.) Plus: Other Taxes**                            $          -
(if applicable)
Pre-Sale Balance:                                    $    223,280.77

**II. A.) Gross Sale Proceeds:**                      $     54,000.00

**B.) Less: Cost of Repossession & Sale:**
Lien Search:                      $       -
Advertising:                      $       -
Transportation/Hauling:           $  3,667.40
Storage:                          $       -
Appraisal:                        $       -
Repairs:                          $       -
Attorney's Fees:                  $       -
Other:                            $       -
Total Costs:                                          $      3,667.40

**C.) Less: Percent of Total Rent/Actual**
Cost of Equipment (if a Lease):   0%                  $          -

**Net Sale Proceeds:**                                $     50,332.60
(Gross Sale Proceeds less II. A.) and II. B.) may not be less than zero)

**III. DEFICIENCY (Pre-Sale Balance less Net Sale Proceeds):**    $    172,948.17

**IV. PER DIEM:**        Rate:        24.00%        $       115.30

1 of 1

Initial:     DMC
Date:        7/21/2005

# EXHIBIT "4"

Department of Defense Manpower Data Center                           JAN-27-2006 13:24:47



Military Status Report
Pursuant to the Service Members' Civil Relief Act

| Last Name | First/Middle | Begin Date | Active Duty Status | Service/Agency |
|-----------|--------------|------------|--------------------|----------------|
| HARPER | DELENO MAX | | Based on the information you have furnished, the DMDC does not possess any information indicating that the individual is currently on active duty. | |

Upon searching the information data banks of the Department of Defense Manpower Data Center, the above is the current status of the individual, per the Information provided, as to all branches of the Military.



Robert J. Brandewie, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The Department of Defense strongly supports the enforcement of the Service Members Civil Relief Act [50 USCS Appx. §§ 501 et seq] (SCRA) (formerly the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual is on active duty, or is otherwise entitled to the protections of the SCRA, you are most strongly encouraged to contact us by phone at (703-696-6762). We will then conduct further research. Your failure to re-contact DMDC may cause provisions of the SCRA to be invoked against you.

This response reflects current active duty status only. For historical information, please contact the military services SCRA point of contact.

See: http://www.defenselink.mil/faq/pis/PC09SLDR.html.

**WARNING:** This certificate was provided based on a name and Social Security number (SSN) provided by the requester. Providing an erroneous name or SSN will cause an erroneous certificate to be provided.

*Report ID:***BPUOMLFLZQK**